UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sandy Frank Productions LLC,

      Plaintiff,

v.                                                                    Case No.: 11-10933
                                                                      Honorable Sean F. Cox

Michigan Film Office, a governmental agency,
and Michigan Department of Treasury,
a governmental agency,

      Defendants.

_____/

## OPINION & ORDER GRANTING
## DEFENDANTS' MOTION TO DISMISS

Plaintiff Sandy Frank Productions LLC filed this action against the Michigan Film Office

and the Michigan Department of Treasury, alleging a number of state and federal violations after

the Michigan Film Office denied Plaintiff a Michigan Film Production Tax Credit.  The matter is

currently before the Court on Defendants' Motion to Dismiss.  Defendants contend that they are

entitled to Eleventh Amendment immunity and that this Court lacks subject matter jurisdiction

over Plaintiff's claims.  Defendants' also seek dismissal for improper venue and for failure to

state a claim upon which relief can be granted.  A hearing on this matter was scheduled for

December 15, 2011, but Plaintiff's counsel did not appear at the hearing.  As a result, the Court

canceled oral argument and shall determine the motion solely on the briefs, pursuant to Local

Rule 7.1(f)(2).  For the reasons set forth below, the Court shall GRANT Defendants' Motion to

Dismiss.

## BACKGROUND

1

On or about March 9, 2011, Sandy Frank Productions LLC ("Plaintiff"), a New York entity, filed this action against the Michigan Film Office and the Michigan Department of Treasury. Plaintiff's complaint alleges the following state and federal claims: Violation of M.C.L. § 208.1455, Michigan Film Production Tax Credit (Count I); Violation of M.C.L. § 24.201 *et seq.*, Michigan Administrative Procedures Act (Count II); Unjust Enrichment (Count III); Breach of Contract (Count IV); Breach of Implied Contract (Count V); Fraud/Misrepresentation (Count VI); Equal Protection – Fourteenth Amendment, Different Treatment of Similarly Situated Parties (Count VII); and Due Process - Fourteenth Amendment (Count VIII).

On July 28, 2011, the Michigan Film Office and the Michigan Department of Treasury filed a Motion to Dismiss. (Def's Br., D.E. No. 10). Plaintiff responded to Defendants' motion on August 19, 2011. (Plf's Resp., D.E. No. 15). Within Plaintiff's response, Plaintiff requests that the Court allow it to amend its complaint. To date, Plaintiff has not filed a motion for leave to amend its complaint.

According to the briefs submitted by the parties, the facts are as follows.

In 2008, in an effort to encourage television and film production in the State of Michigan, the Michigan Legislature passed the Michigan Film Production Tax Credit, codified at M.C.L. § 208.1455.[1] The Michigan Film Office (the "Film Office") is a state agency within the Michigan Department of Treasury (the "Treasury") that oversees distribution of Michigan's Film Production Tax Credit. *See* M.C.L. § 208.1455(1). With the concurrence of the Treasury, the

---

[1]M.C.L. § 208.1455 has been repealed by 2011 PA 39 when conditions applied by enacting section 1 of the act are met.

2

Film Office may enter into agreements with eligible production companies and grant them credits of up to 42% against Michigan's Business Tax.  *Id*.  An eligible production company and eligible production must meet all the requirements enumerated in M.C.L. § 208.1455.

In 2009, Plaintiff began planning a reality show to be filmed and produced at various locations throughout Oakland County, Michigan.  The first pilot of the show is described as "a behind the scenes look at how a game show, 'Face the Music,' is developed and produced from conception to filming and production."  (Complaint at ¶ 17).  Plaintiff contends that its "The Making Of . . ."/ "Face the Music" reality show meets all of the requirements of M.C.L. § 208.1455.

Plaintiff contends that, by 2009, their production was already approved for a 30% film tax credit/rebate from the State of Connecticut.  In mid-2009, Plaintiff's representatives contacted representatives from the Film Office, including then-Director of the Film Office, Janet Lockwood, and her spokesperson, Ken Droz.  Plaintiff asserts that the Film Office representatives induced Plaintiff to produce its show in Michigan and promised Plaintiff that it would receive a Michigan Film Production Tax Credit for the production of its show.

On September 18, 2009, Plaintiff submitted its tax credit application to the Film Office and the Treasury for its proposed reality show.  Upon alleged assurances from the Film Office, Plaintiff entered into contracts with various Michigan production staff.  By the time Plaintiff began filming its pilot, Plaintiff had not yet received written approval of its tax credit.

On September 30, 2009, the Film Office denied Plaintiff's application for a Michigan Film Production Tax Credit.  Because Plaintiff had already entered into contracts to produce its show in Michigan, Plaintiff had to continue with production of its show at a cost of $350,000.

Plaintiff submitted its application for reconsideration, but it was again denied in March, 2010.

According to Plaintiff, one of the reasons provided by the Film Office for its denial of Plaintiff's application was that, in the Film Office's view, Plaintiff's show, "The Making Of . . .," is in actuality, a game show. The Michigan Film Production Tax Credit excludes game shows from eligibility for the tax credit. *See* M.C.L. § 208.1455(k)(x). Plaintiff maintains that its show is a reality show, centered around the production of a game show, and is not itself a game show. It was also the Film Office's belief that future episodes of the series were not likely to be filmed in Michigan, even if the show is picked up by a network. Plaintiff, however, insists that it provided the Film Office with a list of at least twenty-seven other "The Making Of . . ." shows to be filmed in Michigan. Finally, Plaintiff asserts that the Film Office stated that Plaintiff's show would not have a sufficient economic impact to justify awarding Plaintiff with a tax credit. Plaintiff insists that it spent over $350,000 in Michigan during the production of the pilot episode of its show.

## ANALYSIS

In their motion, Defendants assert a number of grounds for dismissal of Plaintiff's complaint. They do not, however, address the merits of each of Plaintiff's claims. Although they bring their motion pursuant to FED. R. CIV. P. 12(b)(1), (2), (3), and (6), Defendants rely mostly on their claim of immunity as the basis for their claims for dismissal.

I.    Defendants are Entitled to Eleventh Amendment Immunity.

Defendants first contend that, as agencies of the State of Michigan, Plaintiff's complaint should be dismissed because Defendants are entitled to immunity under the Eleventh Amendment. This Court agrees.

4

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Conts. Amend. XI. The entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity. *Nair v. Oakland County Comm. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006).

"The law is clear that Michigan and its agency . . . under the eleventh amendment, are immune from an action for damages or injunctive relief in federal court." *Abick v. State of Michigan*, 803 F.2d 874, 876 (6th Cir. 1986) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 97-98 (1984). "However, the state can be sued if it consents to the suit and therefore waives its immunity." *Id.*

In this case, the Film Office and the Treasury have not waived their immunity. Plaintiff is a New York entity and has brought a claim for damages in federal court against two agencies of the State of Michigan. Because Plaintiff may not bring its claims against a state agency, the Court finds that the Film Office and the Treasury are entitled to Eleventh Amendment immunity.

II.    <u>Plaintiff's Request for Leave to Amend its Complaint.</u>

Within Plaintiff's response, rather than contest Defendants' claim of immunity, Plaintiff states that it "wishes to amend the Complaint in the instant action to include individuals who are officers of [the Film Office and the Treasury]. Those individuals are already named in the Complaint and their illegal and improper actions are fully detailed in the Complaint." (Plf's Resp. at 2). Plaintiff, however, has not filed a motion seeking leave to amend its complaint and does not specifically identify the individuals referenced in its original complaint that it seeks to

add as defendants.

Those state officers that are named in Plaintiff's complaint, but unnamed in Plaintiff's response, that Plaintiff presumably seeks to add as defendants are: 1) former Director of the Film Office, Janet Lockwood; 2) Film Office Spokesperson, Ken Droz; and 3) former State of Michigan Chief Operating Officer, Daniel Krichbaum.  In its request for relief, Plaintiff requests that this Court find Defendants in violation of state and federal law, and "award all appropriate damages, including nominal, compensatory, and punitive damages, attorney's fees and costs, and interest against Defendants."  (Complaint at 41).  Plaintiff is not challenging the constitutionality of the underlying Michigan Film Production Tax Credit statute.

In addition to emphasizing that Plaintiff has not filed a motion to amend pursuant to FED. R. CIV. P. 15, Defendants essentially state that, even if Plaintiff were to amend its complaint, Eleventh Amendment immunity would still apply to the state officers.  This Court agrees and finds that Plaintiff's amendment would be futile.

To the extent that Plaintiff is seeking money damages against any state officer in their official capacity, the state officers would also be entitled to Eleventh Amendment immunity because a claim for money damages against state officials must be treated like a claim against the state.  *See Kentucky v. Graham*. 473 U.S. 159, 167 (1985); *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011).  "This immunity flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution and applies to claims against a State by citizens of the same State, claims against a State by citizens of another State, ***and actions against state officials sued in their official capacity for money damages***." *Barachkov v. 41B Dist. Court, 311 Fed.Appx*. 863, 866–67 (6th Cir. 2009) (emphasis added).

6

Plaintiff relies on *Ex Parte Young*, 209 U.S. 123 (1908), for its position that a state officer may be stripped of Eleventh Amendment Immunity. Plaintiff's reliance on *Ex Parte Young*, however, is misplaced. In that case, the Supreme Court held that the Minnesota Attorney General could be enjoined from prosecuting violations of a state law regarding railroad rates, where that state law had been found to be unconstitutional. The relief requested in that case was based solely on prospective injunctive relief.

In this case, Plaintiff does not allege that the M.C.L. § 208.1455 is, in itself, unconstitutional, and does not seek any prospective injunctive relief. Moreover, the "stripping doctrine" does not apply to claims for money damages. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507–08 (6th Cir. 2008). Although Plaintiff seeks declarations that Defendants have violated certain state laws, they have not requested any prospective injunctive relief that would strip any state officers of their Eleventh Amendment immunity. *See generally Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (stating "implementation of state policy or custom may be reached in federal court *only because* official-capacity actions for prospective relief are not treated as actions against the State."). In this case, Plaintiff merely seeks a declaration that Defendants violated state law and requests money damages. Any potential injunctive relief that would benefit Plaintiff would be retroactive in nature and therefore any state official that Plaintiff seeks to add as a defendant would also be entitled to qualified immunity.

III.    Plaintiff Has Filed This Action in an Improper Venue.

Even if Defendants were not entitled to qualified immunity, this Court agrees with Defendants that Plaintiff has not established that venue is proper in this district.

The general rules for venue are set forth in 28 U.S.C. § 1391, which provides, in relevant

7

part:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State. . .

28 U.S.C. § 1391.  This case is not founded solely on diversity of citizenship and thus this Court must look to 28 U.S.C. § 1391(b) to determine proper venue.

In this case, Plaintiff is a resident of New York, and both the Michigan Film Office and the Michigan Department of Treasury are located in Lansing, Michigan, which is found in the Western District of Michigan.

Plaintiff states that the Eastern District of Michigan is the proper venue for this action because "[t]he television program at issue in the instant action was cast, planned, shot, edited, etc. in Oakland County, Michigan in various municipalities, including Southfield, Novi, and Farmington Hills, all of which fall in the Eastern District of Michigan."  (Plf's Resp. at 3).  The locations at which Plaintiff filmed its show, however, are irrelevant to any of the claims alleged by Plaintiff.  Rather, the event giving rise to the instant cause of action is the Film Office's rejection of Plaintiff's Michigan Film Production Tax Credit Application.  Plaintiff does not contest that the decisions relating to Plaintiff's Michigan Film Credit Application were made in

Lansing, Michigan by officers of the Film Office and Treasury.[2]  Accordingly, the Court finds

that venue is not proper in the Eastern District of Michigan because none of the Defendants

reside in the Eastern District of Michigan and none of the events or omissions giving rise to

Plaintiff's underlying cause of action occurred in the Eastern District of Michigan.

CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (D.E. No. 10) is

GRANTED.  It is FURTHER ORDERED that Plaintiff's complaint is DISMISSED WITH

PREJUDICE.

IT IS SO ORDERED.

S/Sean F. Cox_____
Sean F. Cox
United States District Court

Dated:  January 4, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on
January 4, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez_____
Case Manager

---

[2]Defendants assert that jurisdiction is proper with the Michigan Department of Treasury
and State Court of Claims because this case contemplates a state tax issue.  Plaintiff, however,
asserts a number of non-tax claims against Defendants, including Equal Protection and Due
Process claims, which would fall within the jurisdiction of a federal district court.